IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ROYAL CORRALEJO, on behalf of himself individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAYMARK HEALTH SERVICES, INC.,<br><br>Defendant. | Case No. _____ |

## NOTICE OF REMOVAL

Defendant BayMark Health Services, Inc. ("BayMark"), by undersigned counsel, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, removes this action from the 431st Judicial District Court, Denton County, Texas, Case No. 25-0927-431 (the "State Court Action"), to the United States District Court for the Eastern District of Texas, Sherman Division (the "Notice").

The grounds for removal are as follows:

### I. FACTUAL BACKGROUND[1]

1. In January 2025, BayMark announced that it was the victim of a ransomware attack during which an unauthorized party accessed some of the files on BayMark's systems. On January 29, 2025, Plaintiff Royal Corralejo ("Plaintiff"), on his own behalf and on behalf of other individuals, filed the State Court Action against BayMark in the District Court of Denton County, Texas, alleging claims for (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract;

---

[1] For purposes of this Notice only, BayMark assumes the truth of allegations set forth in the Plaintiff's Petition filed in the State Court Action. However, BayMark denies that it has any liability to Plaintiff or to the class he seeks to represent.

(iv) breach of fiduciary duty; (v) unjust enrichment; (vi) invasion of privacy; and (vii) breach of confidence. (Ex. A, Pet. ¶¶ 152-262.[2])

2. Plaintiff alleges that he is among "tens of thousands" (*Id.*, ¶ 141) of similarly situated individuals who were impacted by the ransomware attack and seeks certification of a nationwide class. (*Id.*, ¶ 138.) Plaintiff seeks relief including actual damages; nominal damages; consequential damages; punitive damages; equitable relief; injunctive relief; credit monitoring; security protocols and training; compliance audits; interest; costs; and attorneys' fees. (*Id.*, ¶ 187; Prayer for Relief.)

## II. REMOVAL IS TIMELY

3. Plaintiff filed this lawsuit on January 29, 2025, and served BayMark with a copy of the summons and Petition on January 30, 2025, through BayMark's registered agent. (Ex. A, Service of Process). BayMark timely removed this action within thirty (30) days of the receipt of the Petition. 28 U.S.C. § 1446(b); *see also Murphy Bros. v. Michetti Pipe Stinging, Inc.*, 526 U.S. 344, 348 (1999) (finding time period for removal begins when the defendant is served).

4. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THIS COURT HAS ORIGINAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

5. This Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than that

---

[2] Petition Paragraphs 251-262 are misnumbered as Paragraphs 1-11.

of the defendant. 28 U.S.C. § 1332(d)(1)–(2)(A); *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 860 (5th Cir. 2010) (per curiam); *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705–06 (5th Cir. 2008).

6. CAFA "significantly expanded federal jurisdiction in diversity class actions" and "was designed to restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quotations omitted).

7. So, "no antiremoval presumption attends cases invoking CAFA," and "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014)); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.").

8. As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), BayMark may remove the State Court Action because this case (i) is pled as a putative class action, (ii) with over 100 proposed plaintiff class members, (iii) that involves a minimal diversity of citizenship among the parties, and (iv) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d). *Preston v. Tenet Healthsystem Mem'l Med. Ctr, Inc.*, 485 F.3d 793, 797 (5th Cir. 2007).

**A.  The Petition is pled as a punitive class action.**

9. CAFA defines a "class action" as "any civil action under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 274, n. 13 (5th Cir. 2009).

10. Plaintiff alleges an action under Texas Rule of Civil Procedure 42. (Ex. A, Pet. ¶ 138.) Because Texas Rule of Civil Procedure 42 is a class action statute, the first CAFA element is satisfied. *See, e.g., Boulanger v. Devlar Energy Mktg., LLC*, No. 3:15-CV-3032-B, 2015 WL 7076475, at *4 (N.D. Tex. Nov. 13, 2015) (stating that plaintiffs filed their original class action petition "under Texas Rule of Civil Procedure 42—the state analogue to federal rule 23").

**B.     Plaintiff alleges a putative class with over 100 proposed members.**

11. Plaintiff alleges that on January 8, 2025, BayMark began notifying individuals that their information may have been impacted by a ransomware attack. (Ex. A, Pet. ¶ 33.) On these grounds, Plaintiff asserts seven claims on behalf of himself and, purportedly, all others similarly situated. (*See generally id.*)

12. Plaintiff defines the putative class as "[a]ll individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach." (*Id.*, ¶ 138.) And Plaintiff alleges that the putative class has "tens of thousands" of members. (*Id.*, ¶ 141.)

13. Accordingly, as currently defined by Plaintiff, the putative class more than meets the 100-person statutory requirement. *See* 28 U.S.C. § 1332(d)(5)(B).

**C.     Minimal diversity of citizenship exists.**

14. Federal courts may exercise jurisdiction over a class action if any class member is a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2)(A). *See Dart Cherokee*, 574 U.S. at 84–85 (noting pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant.").

15. <u>Plaintiff's Citizenship</u>. For diversity purposes, an individual is a "citizen" in the state in which he or she is domiciled. *Pennie v. Obama*, 255 F. Supp. 3d 648, 670 (N.D. Tex.

2017); 28 U.S.C. § 1332(a)(1). A person's "domicile" refers to the state where he or she "has a fixed residence with the intent to remain there indefinitely." *Id.* "Domicile requires residence in the state and an intent to remain in the state." *Preston v. Tenet Healthcare Indians*, 485 F.3d 793, 798 (5th Cir. 2007) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)); *see also Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) ("Evidence of a person's place of residence . . . is prima facie proof of his domicile." (citations omitted)); *but see Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) ("Residence alone is not equivalent of citizenship . . . ."). Plaintiff alleges that he is a "resident and citizen of Antioch, California." (Ex. A, Pet. ¶ 26.) Accordingly, Plaintiff is a citizen of California for the diversity jurisdiction purposes.

16. <u>Putative Class Members' Citizenship</u>. Plaintiff purports to represent a class broadly defined as "[a]ll individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach." (*Id.*, ¶ 138.) Thus, as alleged by Plaintiff, members of the putative class are located in all fifty states.

17. <u>BayMark's Citizenship</u>. Pursuant to 28 U.S.C. § 1332(c), a corporation is a citizen both of the state in which it is incorporated and the state in which it has its principal place of business. *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518 (5th Cir. 2015). A corporation's "principal place of business is 'where the corporation's high level officers direct, control, and coordinate the corporation's activities.'" *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)). BayMark is a Delaware corporation with its headquarters located in Texas and is therefore both a Delaware and a Texas citizen.

18. Because at least one of the putative class members is a citizen of a state other than BayMark's state of citizenship, "minimal diversity" is established pursuant to CAFA. *Dart Cherokee*, 574 U.S. at 84–85.

### D. The CAFA amount in controversy is satisfied.[3]

19. The final requirement for CAFA jurisdiction—that the amount in controversy exceeds $5 million—is also met in this case. 28 U.S.C. § 1332(d)(2).

20. Under CAFA, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied when a complaint does not allege a specific amount of damages. 28 U.S.C. § 1446(c)(2)(B). "A removing defendant can meet [this] burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015). This inquiry is fact-intensive, and only requires the removing party to show how the amount in controversy exceeds $5 million based on a "'pleading requirement, not a demand for proof.'" *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir. 2010) (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

21. The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee*, 574 U.S. at 89. "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegations." *Id.* Moreover, "[i]n determining whether the amount in controversy exceeds $5,000,000, Courts must aggregate the claims of all individual class members." *Mealer v. Reg'l Mgmt. Corp.*, NO. 3:16-CV-3343-B, 2017 WL 3421130, at *3 (N.D. Tex. Aug. 8, 2017) (citing 28 U.S.C. § 1332(d)(6)).

---

[3] The amounts set forth in this Notice are solely for purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. BayMark denies liability, denies Plaintiff is injured or entitled to recover any amount, and denies that a class can be properly certified in this matter.

22. Once the removing party establishes that the jurisdictional minimum is satisfied, the opposing party must show to a legal certainty that the amount recoverable does not meet the threshold. *Brashear v. Panini Am., Inc.*, No. 3:19-CV-201-L, 2020 WL 13413474, at *4 (N.D. Tex. May 21, 2020). "[I]t is what the plaintiff is claiming and not what the plaintiff is likely to be awarded that determines whether CAFA's jurisdictional amount requirement is satisfied." *Carter v. Westlex Corp.*, 643 F. App'x 371, 376 (5th Cir. 2016) (citations and internal punctuation omitted).

23. As demonstrated below, Plaintiff's alleged individual damages, combined with his other claims and damages allegations, and those of the putative class, make it clear that the amount in controversy exceeds $5,000,000.

24. Plaintiff alleges that he and the putative class "face years of constant monitoring and surveillance of their financial and personal records[.]" (Ex. A, Pet. ¶ 62.) Further, Plaintiff alleges that he and the putative class "lost time" that was spent on mitigation efforts and monitoring their accounts. (*Id.*, ¶ 119.) And Plaintiff alleges that he and putative class members may incur "out of pocket costs, *e.g.*, for or purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft. (*Id.*, ¶ 15.) Plaintiff also alleges that he and the putative class suffered "lost or diminished value" of their information, lost "benefit of the bargain," and "nominal damages[.]" (*Id.*, ¶ 109.)

25. <u>Credit Monitoring Expenses</u>. Three main identity-protection agencies—IDShield, Equifax, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.95 to $24.99 per person per month. For example, IDShield Individual offers one-bureau credit monitoring with an unlimited service guarantee, dark web internet monitoring, data breach notifications, full-service restoration when theft occurs, and 24/7 assistance, among other services,

for $14.95 per month for one individual.[4] Similarly, both Equifax[5] and Experian[6] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $24.99 a month, respectively. For example, the cost of providing one year of credit monitoring services at $14.95 per month (the cheapest of the three products) by 30,000 individuals (Plaintiff alleges that "tens of thousands" of individuals make up the class) is approximately $5,382,000.

26. <u>Exemplary Damages</u>. In addition to the damages discussed above, Plaintiff also seeks "punitive damages." (Ex. A, Pet. Prayer for Relief.) Courts have approved punitive damage ratios of 4:1, punitive to compensatory. *See, e.g., Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–23 (1991) (finding four times the amount of compensatory damages might be "close to the line" but did not "cross the line into the area of constitutional impropriety"). Here, where Plaintiff seeks more than $1,000,000 in damages for the putative class (Ex. A, Pet. ¶ 24), compensatory and punitive damages could easily exceed CAFA's jurisdictional threshold. As such, the amount-in-controversy requirement is met by Plaintiff's requests for punitive damages, alone.

27. <u>Injunctive Relief</u>. The above-discussed, alleged damages are further compounded by Plaintiff's request for injunctive relief on behalf of himself and a putative class. Ex. A, Pet. Prayer for Relief; *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking…injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). Plaintiff's allegations in the Petition are insufficient to allow BayMark to calculate the amount of these alleged damages and relief. However, BayMark

---

[4] *See IDShield Plans & Pricing*, https://www.idshield.com/#plans (last visited Feb. 19, 2025); see also IDShield Individual http://checkout.idshield.com/?plan=IDSI&freetrial=true&region=TX (last visited Feb. 19, 2025).
[5] *See Equifax*, https://www.equifax.com/equifaxcomplete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=50235599488 (last visited Feb. 19, 2025).
[6] *See Experian*, https://www.experian.com/protection/identity-theft-and-credit-protection/ (last visited Feb. 19, 2025).

underscores these allegations as further evidence that the amount in controversy exceeds $5,000,000, as already established.

28. Accordingly, because this case was pled as a class action with requisite minimal diversity, class size, and amount in controversy under CAFA, removal is proper.

## IV.   NO EXCEPTIONS TO CAFA APPLY TO THIS REMOVAL

29. "In enacting CAFA, Congress sought to correct state and local court '[a]buses in class actions' . . . by expanding federal diversity jurisdiction over interstate class actions." *Arbuckle Mt. Ranch of Tex., Inc.*, 810 F3d at 337 (citing CAFA, Pub. L. No. 109-2, § 2, 119 Stat. 4). This Circuit directs district courts to recognize that CAFA exceptions are narrow, "with all doubts resolved in favor of exercising jurisdiction over the case." *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011). Under CAFA, Plaintiff bears the burden of persuading the Court that an exception applies to the removal. *Preston*, 485 F.3d at 797.

30. The exceptions under CAFA do not apply here because less than one-third of the members of the proposed class are citizens of Texas. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(I) (local controversy exception requires greater than two-thirds of the members of the proposed class in the aggregate are citizens of the State in which the action was originally filed); § 1332(d)(4)(B) (home state controversy exception has the same requirement); § 1332(d)(3) (discretionary exception requires greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed).

31. BayMark sent notices of the ransomware attack to addresses in 21 states—and only four notices were sent to Texas addresses. Even so, Plaintiff could never demonstrate the citizenship of the notified addressees without speaking directly with each person. *Preston v. Tenet Healthcare Indians*, 485 F.3d 793, 798 (5th Cir. 2007) ("Domicile requires residence in the state

and an intent to remain in the state" and recognizing that medical records are not tantamount to citizenship) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).

32. This is especially true here considering BayMark's locations and services. BayMark, as the parent company of various healthcare facilities, provides administrative services to BAART Programs, Healthcare Resource Centers, and MedMark Treatment Centers across the United States. Its largest service areas are in California, Massachusetts and Ohio. Examining BayMark's records, it appears that most of the addresses BayMark sent notification letters to are outside of the state of Texas. These facts indicate either that it is more likely than not that less than two-thirds of the putative class are Texas citizens, or that there is no way for Plaintiff to meet his evidentiary burden of proving the citizenship of at least one third of the putative class.

33. Moreover, Plaintiff cannot show that the exceptions apply without numerous depositions of putative class members. The only records available to either BayMark or Plaintiff are the addresses used by BayMark to notify individuals that their information may have been impacted in the ransomware attack. BayMark obtained these addresses from medical records. And, this Circuit holds that medical records are not tantamount to domicile/citizenship. *Preston v.Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 798 (5th Cir. 2007). No feasible means exists to prove by a preponderance of the evidence that two-thirds or more of the class reside and intend to remain in Texas.

34. The local controversy exception cannot be invoked for another reason as well. Invoking the local controversy exception requires Plaintiff to prove, among other things, that "no other class action asserting the same or similar allegations against any of the defendants" has been filed in the preceding three years. 28 U.S.C. § 1332(d)(4)(A). "CAFA does not define what constitutes an 'other class action' other than to limit it to filed cases asserting similar factual

allegations against a defendant. The goals of the statute, however, provide guidance." *E.g., Opelousas Gen. Hosp. Auth. v. PPO Plus LLC*, No. 14–0395, 2014 WL 1713414, *7 (W.D. La. 2014). In enacting CAFA, Congress recognized the benefits of having one federal forum to adjudicate multiple cases filed in various courts against a defendant. CAFA, Pub.L. No. 109-2, § 2(a)(1), 119 Stat. 4. In other words, "the statute seeks to control the impact of multiple class actions filed by different members of the same class against a defendant by providing a single forum to resolve similar claims." *Opelousas*, 2014 WL 1713414, *7–8 (citing *Vodenichar v. Halcon Energy Props, Inc.*, 733 F.3d 497, 509 (3d Cir. 2013)). This is precisely BayMark's situation.

35. On February 20, 2025, plaintiff Carole Corralejo, individually and on behalf of a nationwide class, filed a Class Action Complaint titled *Carole Corralejo v. BayMark Health Services, Inc.*, No. 4:25-cv-00174, in the United States District Court for the Eastern District of Texas, Sherman Division. Plaintiff Corralejo alleges state law claims arising from the same ransomware attack identified in the State Court Action. The *Corralejo* Class Action Complaint is attached hereto as **Exhibit A.** There can be no dispute that the *Corralejo* Class Action was filed within three years of this case, involves the same factual allegations as those at issue in this case, and is against the same defendant, rendering the local controversy exception inapplicable for this reason as well.

36. Resolving all doubts in favor of CAFA jurisdiction, none of the exceptions apply to this removal.

### V. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

37. As required by 28 U.S.C. § 1446(d), BayMark is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of the Notice of Removal with the clerk of the State Court Action, which will provide notice to all entered counsel.

38. Under 28 U.S.C. § 1446(a) and Local Rule CV-81 of the Eastern District of Texas Local Civil Rules, this Notice is accompanied by the following documents:

   a. **Exhibit B:** A Civil Cover Sheet;

   b. **Exhibit C:** A certified copy of the state court docket sheet;

   c. **Exhibit D:** An index of documents filed in the state court action and copies of each document as set forth below:

      i. D-1   Plaintiff's Original Petition;

      ii. D-2   Service Return;

   d. **Exhibit E:** A list of all parties in the case;

   e. **Exhibit F:** A list of all attorneys involved in the action being removed;

   f. **Exhibit G:** A record of which parties have requested a jury trial in this matter; and

   g. **Exhibit H:** The name and address of the court from which the case was removed.

39. Pursuant to 28 U.S.C. § 1446(d), BayMark is also promptly filing a written notice of filing of Notice of Removal and a true and complete copy of this Notice of Removal with the clerk of the State Court Action and is serving Plaintiff with copies of the same.

## VI.   RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

40. Nothing in this Notice is intended to be, or should be construed as, an express or implied admission by BayMark of any fact alleged by Plaintiff; of the validity or merit of any of Plaintiff's claims and allegations; or as a limitation of any of BayMark's rights, claims, remedies, and defenses in connection with this action.

41. Pursuant to Rule 81(c) of the Federal Rules of Civil Procedure, BayMark will present its defenses by pleading at the time prescribed therein, and specifically reserves its rights to assert all defenses, including those defenses under Rule 12(b). BayMark intends no admission of fact, allegation, claim, liability or wrongdoing by this Notice, and expressly reserves all defenses, motions, and pleas, including, without limitation, objections to the sufficiency of Plaintiff's pleadings and the propriety of class certification. BayMark further reserves the right to submit additional evidence in support of the Notice, including as may be necessary to address and refute any contentions set forth in a motion to remand.

WHEREFORE, Defendant BayMark Health Services, Inc. prays that this Notice of Removal be deemed good and sufficient, and that Plaintiff's Class Action Petition be removed from the District Court of Denton County, Texas to the United States District Court for the Eastern District of Texas. Defendant further prays that this Court accept jurisdiction of this action and that it be placed on this Court's docket for further proceedings as though it had originated in this Court and that the Court issue all necessary orders.

Dated: February 23, 2025.

                                                        Respectfully submitted,

*/s/Lisa A. Houssiere*
Lisa A. Houssiere
Eastern District of Texas Bar No.: 14691
**BAKER & HOSTETLER LLP**
811 Main Street, Ste. 1100
Houston, TX 77002
Telephone: (713) 751-1600
Facsimile: (713) 751-1717
*lhoussiere@bakerlaw.com*

Melissa M. Bilancini (*pro hac vice forthcoming*)
**BAKER & HOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, Ohio 44114
Telephone: (216) 861-7094
Facsimile: (216) 696-0740
*mbilancini@bakerlaw.com*

*Attorneys for Defendant BayMark Health Services, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 23rd day of February, 2025, the foregoing Notice of Removal was served via ECF on all counsel of record.

/s/ *Lisa A. Houssiere*
Lisa A. Houssiere

*Attorney for Defendant BayMark Health Services, Inc.*