# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| ROYAL CORRALEJO, on behalf of himself individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | |
| BAYMARK HEALTH SERVICES, INC., | |
| Defendant. | |

**INDEX OF DOCUMENTS FILED IN STATE COURT**

| **Exhibit:** | **Date Filed/Entered:** | **Description:** |
|---|---|---|
| D-1 | January 29, 2025 | Original Petition |
| D-2 | January 30, 2025 | Service Return |

# Exhibit D-1

FILED 1/23/2025 6:01 PM
David Trantham
Denton County District Clerk
By: Michelle Bennear, Deputy

25-0927-431

**CAUSE NO. _____**

| | |
|---|---|
| ROYAL CORRALEJO, on behalf of himself individually and on behalf of all others similarly situated, | IN THE DISTRICT COURT OF |
| Plaintiff, | |
| v. | DENTON COUNTY, TEXAS |
| BAYMARK HEALTH SERVICES, INC., | |
| Defendant. | _____ JUDICIAL DISTRICT |

## CLASS ACTION PETITION

Plaintiff Royal Corralejo ("Plaintiff") brings this Class Action Petition ("Petition") against Baymark Health Services, Inc. ("Baymark" or "Defendant"), individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigation, and upon information and belief as to all other matters, as follows:

### SUMMARY OF ACTION

1.     Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the sensitive information of individuals against a foreseeable and preventable cyberattack (the "Data Breach").

2.     Defendant is North America's largest provider of medication-assisted treatment for substance use disorders, is the parent company of various healthcare facilities, provides administrative services to BAART Programs, Healthcare Resource Centers, and MedMark Treatment Centers, and is headquartered in Lewisville, Texas.[1]

---

[1] *About Us*, BayMark Health Services, Inc. https://baymark.com/about-us/ (last visited January 29, 2025).

3.      Plaintiff's and Class Members' sensitive personal information—which they entrusted to Defendant on the mutual understanding that Defendant would protect it against disclosure—was targeted, compromised, and unlawfully accessed due to the Data Breach.

4.      Defendant collected and maintained certain personally identifiable information ("PII") and protected health information ("PHI," and together with PII, "Private Information") of Plaintiff and the putative Class Members (defined below), who are, or were, patients of Defendant.

5.      Upon information and belief, the Private Information compromised in the Data Breach included Plaintiff's and Class Members' name, Social Security number, driver's license number, date of birth, services received, dates of services, insurance information, treating provider, treatment and/or diagnostic information, which includes PHI as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[2]

6.      The Private Information compromised in the Data Breach was exfiltrated by cybercriminals and remains in the hands of those cybercriminals who target Private Information for its value to identity thieves and other bad actors.

7.      As explained below, Plaintiff and Class Members have suffered concrete injuries in fact as a result of the Data Breach.

8.      The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect its patients Private Information from a foreseeable and preventable cyberattack.

9.      Moreover, upon information and belief, Defendant was targeted in this Data Breach due to its status as a healthcare entity that collects and maintains highly valuable Private Information on its systems.

---

[2] Exhibit 1, Excerpt of Royal Corralejo Notice Letter (Jan. 8, 2025).

10.     Defendant maintained, used, and shared the Private Information in a reckless manner. In particular, the Private Information was stored, used, and transmitted by Defendant in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that Private Information in its possession in a dangerous condition.

11.     Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff and Class Members with prompt and accurate notice of the Data Breach.

12.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct which resulted in the Private Information that Defendant collected and maintained being accessed and acquired by data thieves.

13.     Armed with the Private Information accessed in the Data Breach, data thieves have already engaged in identity theft and fraud and can in the future commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

14.     As a result of the Data Breach, Plaintiff and Class Members have been exposed to

a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

15.    Plaintiff and Class Members may also incur out of pocket costs, *e.g.*, for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

16.    Plaintiff brings this class action lawsuit on behalf of all those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members informing them that their information had been subject to unauthorized access by an unknown third party and precisely what specific type of information was accessed.

17.    Through this Petition, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

18.    Plaintiff and Class Members have a continued interest in ensuring that their Private Information is and remains safe, and they are entitled to injunctive and other equitable relief.

## **DISCOVERY CONTROL PLAN**

19.    Due to the complexity of this case, discovery should be conducted pursuant to a discovery control plan under Level 3, pursuant to Texas Rule of Civil Procedure 190.4.  Plaintiff affirmatively pleads that this suit is not governed by the expedited actions process of Texas Rules of Civil Procedure 169 because Plaintiff seek monetary relief in excess of $250,000.

**JURISDICTION AND VENUE**

20.     This Court has subject matter jurisdiction over this controversy because the implied contract between Plaintiff and Defendant was established in Texas. Moreover, Defendant's failure to adequately safeguard Plaintiff and Class Members' data, *i.e.*, Defendant's negligent conduct, occurred in Denton County, Texas. Plaintiff has suffered injury within the jurisdictional limits of this Court.

21.     This Court has personal jurisdiction over Defendant because it operates and maintains its principal places of business in Denton County, Texas, including its "principal office" at 1720 Lakepointe Drive, Suite 117, Lewisville, Texas 75057, which is listed on its Application for Registration of a Foreign For-Profit Corporation filed with the Texas Secretary of State on April 28, 2022:



22.     Venue is proper in this county under Section 15.002 of the Texas Civil Practice and Remedies Code because a substantial part of the events or omissions giving rise to the claim occurred in this county.

23.     Upon information and belief, at least two-thirds of the Class are residents and citizens of Texas.

24.     Pursuant to Texas Rule of Civil Procedure 47, Plaintiff seeks monetary relief over $1,000,000 for the Class.

25.     Upon information and belief, Plaintiff's individual damages are less than $75,000.

## PARTIES

26.     Plaintiff Royal Corralejo is a natural person and a resident and citizen of Antioch, California.

27.     Defendant BayMark, a Delaware Corporation, is North America's largest provider of medication-assisted treatment for substance use disorders, is the parent company of various healthcare facilities, provides administrative services to BAART Programs, Healthcare Resource Centers, and MedMark Treatment Centers, and is headquartered in Lewisville, Denton County, Texas.[3] Its principal office, according to its Application for Registration of a Foreign For-Profit Corporation filed with the Texas Secretary of State on April 28, 2022, is located at 1720 Lakepointe Drive, Suite 117, Lewisville, Texas 75057. It can be served with process of this lawsuit via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## FACTUAL ALLEGATIONS

### *Defendant's Business*

28.     Defendant BayMark is North America's largest provider of medication-assisted treatment for substance use disorders. It is the parent company of various healthcare facilities, and provides administrative services to BAART Programs, Healthcare Resource Centers, and MedMark Treatment Centers.

29.     Plaintiff and Class Members are current and former patients of Defendant.

30.     In the course of their relationship, patients, including Plaintiff and Class Members, provided Defendant with at least the following: name, Social Security number, driver's license number, date of birth, services received, dates of services, insurance information, treating provider, treatment and/or diagnostic information.

---

[3] *About Us*, Baymark Health Services, Inc. https://baymark.com/about-us/ (listing corporate office address as 1720 Lakepointe Drive, Suite 117, Lewisville, Texas 75057) (last visited January 29, 2025).

31.    Upon information and belief, in the course of collecting Private Information from patients, including Plaintiff and Class Members, Defendant promised to provide confidentiality and adequate security measures for the data it collected from patients through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.[4]

32.    Plaintiff and the Class Members, as patients of Defendant, relied upon these promises and on this sophisticated business entity to keep their sensitive Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members, in general, demand security to safeguard their Private Information.

***The Data Breach***

33.    On or about January 8, 2025, Defendant began sending Plaintiff and other Data Breach victims a letter notifying them of the Data Breach ("Notice Letter"), informing them that:

**What Happened?**
On October 11, 2024, we learned of an incident that disrupted the operations of some of our IT systems. We immediately took steps to secure our systems, launched an investigation with the assistance of third-party forensic experts, and notified law enforcement. Our investigation determined that an unauthorized party accessed some of the files on BayMark's systems between September 24, 2024 and October 14, 2024. We then initiated a review and analysis of those files.

**What Information Was Involved?**
On November 5, 2024, we determined that these files contained information that varied per patient but could have included your name and one or more of the following: Social Security number, driver's license number, date of birth, services received, dates of service, insurance information, treating provider, and treatment and/or diagnostic information.

**What We Are Doing.**
We are notifying you of this incident to assure you that we take this matter very seriously. To help prevent something like this from happening again, we have implemented additional safeguards and technical security measures to further protect and monitor our systems.

Exhibit 1, Excerpt of Royal Corralejo Notice Letter (January 8, 2025).

34.    And now Baymark has given notice on its website, though it shares essentially the same information as the Notice Letter:

---

[4] *Web Privacy Policy*, BAYMARK HEALTH SERVICES, INC., https://baymark.com/web-privacy-policy/ (last visited January 29, 2025).

## NOTICE OF DATA PRIVACY INCIDENT

BayMark Health Services, Inc. ("BayMark"), as the parent company of various healthcare facilities, provides administrative services to BAART Programs, Healthcare Resource Centers, and MedMark Treatment Centers (the Facilities). On January 8, 2025, we began mailing notification letters to certain patients whose information related to some of the services they received from the Facilities was involved in an incident.

On October 11, 2024, we learned of an incident that disrupted the operations of some of our IT systems. We immediately took steps to secure our systems, launched an investigation with the assistance of third-party forensic experts, and notified law enforcement. Our investigation determined that an unauthorized party accessed some of the files on BayMark's systems between September 24, 2024 and October 14, 2024. We then initiated a review and analysis of those files.

On November 5, 2024, we determined that these files contained information that varied per patient but could have included patient names and one or more of the following: Social Security number, driver's license number, date of birth, services received, dates of service, insurance information, treating provider, and treatment and/or diagnostic information.

We remain committed to protecting the confidentiality and security of patient information, and apologize for the concern this may cause. We are offering complimentary identity monitoring services to patients whose Social Security numbers or driver's license numbers may have been involved. Additionally, it is always a good idea for patients to remain vigilant and review their statements for suspicious activity.

We take this matter very seriously. To help prevent something like this from happening again, we have implemented additional safeguards and technical security measures to further protect and monitor our systems.

We also established a dedicated, toll-free call center to help answer questions about the incident. The call center can be reached at 855-295-0995, available Monday through Friday, 8:00 a.m. to 8:00 p.m. Central Time, except holidays.

*Notice of Data Privacy Incident*, BAYMARK HEALTH SERVICES, INC., https://baymark.com/notice-of-data-privacy-incident/ (last visited January 29, 2025) (Website Notice).

35.     Apparently omitted from the Notice Letter and Website Notice were the identity of the cybercriminals who perpetrated the Data Breach, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

36.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

37.     Despite Defendant's opacity about the root cause of this incident, several facts may

be gleaned from the Notice Letter and Website Notice, including that: (a) this Data Breach was the work of cybercriminals; (b) the cybercriminals first infiltrated Defendant's networks and systems, and downloaded data from the networks and systems (*i.e.*, exfiltrated data or "stole" data); and (c) once inside Defendant's networks and systems, the cybercriminals targeted information including Plaintiff's and Class Members' PHI and other sensitive information for download and theft.

38.     In the context of data breach notice letters of this type, Defendant's use of the phrase "potentially impacted" is misleading language. Companies send notice letters because data breach notification laws require them to do so.  And such letters are only sent to those persons who Defendant itself has a reasonable belief that such personal information was accessed or acquired by an unauthorized individual or entity. Accordingly, by sending a notice of data breach letter to Plaintiff and Class Members, it admits that Defendant itself has a reasonable belief that Plaintiff's and Class Members' Private Information, including Social Security numbers and PHI, were "subject to unauthorized access or acquisition" by cybercriminals.

39.     Defendant had obligations created by the Federal Trade Commission Act ("FTC Act"), HIPAA, contract, common law, and industry standards to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

40.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of Private Information.

41.     The attacker accessed and acquired files containing unencrypted Private

Information of Plaintiff and Class Members. Plaintiff's and Class Members' Private Information was accessed and stolen in the Data Breach.

42.     Upon information and belief, Plaintiff's and Class Members' Private Information has been disseminated and sold on the dark web following the Data Breach. Indeed, that is the *modus operandi* of cybercriminals that commit cyberattacks of this type.

### *Data Breaches Are Preventable*

43.     Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting its equipment and computer files containing Private Information.

44.     As explained by the Federal Bureau of Investigation ("FBI"), "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[5]

45.     To prevent and detect cyberattacks and/or ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a

---

[5] *Ransomware Prevention and Response for* CISOs, FBI, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view, (last visited January 29, 2025).

centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have full access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[6]

46.     To prevent and detect cyberattacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure Internet-Facing Assets**

-     Apply latest security updates
-     Use threat and vulnerability management
-     Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

---

[6] *Id.* at 3–4.

-    Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

-    Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

-    Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

-    Monitor for adversarial activities
-    Hunt for brute force attempts
-    Monitor for cleanup of Event Logs
-    Analyze logon events; and

**Harden infrastructure**

-    Use Windows Defender Firewall
-    Enable tamper protection
-    Enable cloud-delivered protection
-    Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office[Visual Basic for Applications].[7]

47.    Given that Defendant was storing the Private Information of its current and former patients, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

48.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and data thieves acquiring and accessing the Private Information of, upon information and belief, nearly thousands of individuals, including that of Plaintiff and Class Members.

---

[7] *Human-operated ransomware attacks: A preventable disaster*, MICROSOFT SECURITY, (Mar. 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/, (last visited January 29, 2025).

***Defendant Acquires, Collects, And Stores Patients' Private Information***

49.     Defendant acquires, collects, and stores a massive amount of Private Information of its current and former patients.

50.     As a condition of obtaining healthcare services from Defendant, Defendant requires that patients and other personnel entrust it with highly sensitive personal information.

51.     By obtaining, collecting, and using Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

52.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and would not have entrusted it to Defendant absent a promise to safeguard that information.

53.     Upon information and belief, in the course of collecting Private Information from patients, including Plaintiff, Defendant promised to provide confidentiality and adequate security for their data through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.[8]

54.     Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Defendant Knew, or Should Have Known, of the Risk Because Healthcare Entities in Possession of Private Information Are Particularly Susceptible to Cyberattacks***

55.     Defendant's data security obligations were particularly important given the

---

[8] *Web Privacy Policy*, BAYMARK HEALTH SERVICES, INC., https://baymark.com/web-privacy-policy/ (last visited January 29, 2025).

substantial increase in cyberattacks and/or data breaches targeting healthcare entities that collect and store Private Information, like Defendant, preceding the date of the Data Breach.

56.    Data breaches, including those perpetrated against healthcare entities that store Private Information in their systems, have become widespread.

57.    In the third quarter of the 2023 fiscal year alone, 7,333 organizations experienced data breaches, resulting in 66,658,764 individuals' personal information being compromised.[9]

58.    In light of recent high profile cybersecurity incidents at other healthcare partner and provider companies, including HCA Healthcare (11 million members, July 2023), Managed Care of North America (8 million members, March 2023), PharMerica Corporation (5 million members, March 2023), HealthEC LLC (4 million members, July 2023), ESO Solutions, Inc. (2.7 million members, September 2023), and Prospect Medical Holdings, Inc. (1.3 million members, July-August 2023),  Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

59.    Indeed, cyberattacks, such as the one experienced by Defendant, have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store Private Information are "attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[10]

60.    Additionally, as companies became more dependent on computer systems to run

---

[9]    *Quick    Start    Guide,* Victim    Help    Center,    ITRC IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/publication/q3-data-breach-2023-analysis/, (last visited January 29, 2025).
[10]    Ben    Kochman,    *FBI,    Secret    Service    Warn    Of    Targeted    Ransomware,* LAW360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware, (last visited January 29, 2025).

their business,[11] *e.g.*, working remotely as a result of the COVID-19 Pandemic, the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[12]

61.     Defendant knew and understood unprotected or exposed Private Information in the custody of healthcare entities, like Defendant, is valuable and highly sought after by nefarious third parties seeking to illegally monetize that Private Information through unauthorized access.

62.     Plaintiff and Class Members now face years of constant monitoring and surveillance of their financial and personal records and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

63.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

64.     The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen—particularly PHI—fraudulent use of that information and damage to victims may continue for years.

65.     In the Notice Letter, Defendant makes an offer of 12 months of identity theft protection services. This is wholly inadequate to mitigate the harm and compensate Plaintiff and Class Members, as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial

---

[11] *Implications of Cyber Risk for Financial Stability,* FEDS Notes, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, (May 12, 2022), https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html, (last visited January 29, 2025).

[12] *Key Threats and Cyber Risks Facing Financial Services and Banking Firms in 2022,* Dr. Suleyman Ozarslan, PICUSLABS, (March 24, 2022), https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022. (last visited January 29, 2025).

fraud, and it entirely fails to provide compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' Private Information.

66.    Defendant's offer of credit and identity monitoring establishes that Plaintiff's and Class Members' sensitive Private Information was in fact affected, accessed, compromised, and exfiltrated from Defendant's computer systems, necessitating ongoing (indeed, indefinite) monitoring.

67.    As a healthcare entity in custody of the Private Information of its patients, Defendant knew, or should have known, the importance of safeguarding Private Information entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff and Class Members as a result of a breach. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

### Value Of Private Information

68.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[13] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[14]

69.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity

---

[13] 17 C.F.R. § 248.201 (2013).
[14] Id.

credentials.[15]

70.    For example, Personal Information can be sold at a price ranging from $40 to $200.[16] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[17]

71.    Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[18]

72.    The greater efficiency of electronic health records brings the risk of privacy breaches. These electronic health records contain a lot of sensitive information (*e.g.,* patient data, patient diagnosis, lab results, medications, prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, PHI/PII is a valuable commodity for which a "cyber black market" exists where criminals openly this information on several underground internet websites.

73.    Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[19] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[20]

---

[15] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/, (last accessed January 29, 2025).

[16] *Here's How Much Your Personal Information Is Selling for on the Dark Web,* EXPERIAN, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed January 29, 2025).

[17] *In the Dark,* VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/, (last accessed January 29, 2025).

[18] *Medical I.D. Theft,* EFRAUDPREVENTION, https://efraudprevention.net/home/education/?a=187#:~:text=A%20thief%20may%20use%20your,credit%20report%20may%20be%20affected, (last accessed January 29, 2025).

[19] *Healthcare Data Breaches: Insights and Implications,* PubMed Central, NATIONAL LIBRARY OF MEDICINE, (May 13, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133/, (last accessed January 29, 2025).

[20] *December 2019 Healthcare Data Breach Report,* Steve Alder, THE HIPAA JOURNAL, (January 21, 2020), https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/, (last accessed January 29, 2025).

74.    According to account monitoring company LogDog, medical data sells for $50 and up on the dark web.[21]

75.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[22]

76.    A study by Experian found that the average cost of medical identity theft is "about $20,000" per incident and that most victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive to restore coverage.[23] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third of medical identity theft victims saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[24]

77.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—PHI, dates of birth, and names.

78.    This data demands a much higher price on the black market. Martin Walter, senior

---

[21] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, NAKED SECURITY (October 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content, (last accessed January 29, 2025).

[22] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," KAISER HEALTH NEWS, (February 7, 2014), https://khn.org/news/rise-of-indentity-theft/, (last accessed January 29, 2025).

[23] *Study: Medical Identity Theft is Costly for Victims*, Elinor Mills, CNET, (March 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/, (last accessed January 29, 2025).

[24] *Id.;* https://www.kiplinger.com/personal-finance/change-healthcare-data-breach-what-to-know#:~:text=There%20are%20several%20things%20to,accounts%20to%20protect%20your%20credit (last accessed January 29, 2025).

director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information…[is] worth more than 10x on the black market."[25]

79.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

80.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

### Defendant Fails to Comply with FTC Guidelines

81.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

82.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. These guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security

---

[25] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD, (February 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html, (last accessed January 29, 2025).

[26] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf, (last accessed January 29, 2025).

problems.[27]

83.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[28]

84.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

85.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential member data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

86.     These FTC enforcement actions include actions against healthcare providers like Defendant. *See, e.g., In the Matter of LabMd, Inc., A Corp*, 2016-2 Trade Cas. (Henry Ford) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

---

[27] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION, (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf, (last accessed January 29, 2025).
[28] *Id.*

87.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

88.     Defendant failed to properly implement basic data security practices.

89.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to the Private Information of its patients or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

90.     Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of its patients. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

### *Defendant Fails to Comply with HIPAA Guidelines*

91.     Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

92.     Defendant is subject to the rules and regulations for safeguarding electronic forms

of medical information pursuant to the Health Information Technology Act ("HITECH").[29] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

93.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

94.    HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

95.    HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

96.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

97.    HIPAA's Security Rule requires Defendant to do the following:

  a.    Ensure the confidentiality, integrity, and availability of all electronic PHI the covered entity or business associate creates, receives, maintains, or transmits;

  b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

  c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

  d.    Ensure compliance by its workforce.

---

[29] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining PHI. HITECH references and incorporates HIPAA.

98.    HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

99.    HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic PHI that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

100.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[30]

101.    HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

102.    HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of PHI in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its

---

[30] Breach Notification Rule, U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, (content last reviewed July 26, 2013), https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html, (last accessed January 29, 2025), (emphasis added).

business associate. *See* 45 C.F.R. § 164.530(f).

103.   HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[31] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which the OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US DEPARTMENT OF HEALTH & HUMAN SERVICES, *Guidance on Risk Analysis*.[32]

### *Defendant Fails to Comply with Industry Standards*

104.   As noted above, experts studying cybersecurity routinely identify healthcare entities in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

105.   Several best practices have been identified that, at a minimum, should be implemented by healthcare entities in possession of Private Information, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a

---

[31] *Security Rule Guidance Material,* U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, (last reviewed October 24, 2024), http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html, (last accessed January 29, 2025).
[32] *Guidance on Risk Analysis,* U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, (last reviewed July 22, 2019), https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html, (last accessed January 29, 2025).

key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

106.    Other best cybersecurity practices that are standard for healthcare entities include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

107.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

108.    These foregoing frameworks are existing and applicable industry standards for healthcare entities, and upon information and belief, Defendant failed to comply with at least one–or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

### *Common Injuries & Damages*

109.    As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is

imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of the benefit of the bargain; actual misuse of their Private Information in the form of experiencing an in increase in spam calls, texts, and/or emails; (vi) their Private Information being disseminated on the dark web; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

### *Data Breaches Increase Victims' Risk of Identity Theft*

110.    As Plaintiff has already experienced, the unencrypted Private Information of Class Members will end up for sale on the dark web as that is the *modus operandi* of hackers.

111.    Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members. Simply put, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members.

112.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

113.    Plaintiff's and Class Members' Private Information is of great value to hackers and

cybercriminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit off their misfortune.

114.    One example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[33]

115.    With "Fullz" packages, cybercriminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

116.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' unregulated sources and identifiers. In other words, even if certain information such as insurance information or driver's license numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

### *Loss of Time to Mitigate Risk of Identity Theft and Fraud*

117.    As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this

---

[33] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, Social Security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge.

Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet the resource and asset of time has been lost.

118.    Thus, due to the actual and imminent risk of identity theft, Defendant, in its Notice Letter, instructs Plaintiff and Class Members to take the following measures to protect themselves: "remain vigilant in reviewing your financial account statements and credit reports for fraudulent or irregular activity on a regular basis."[34]

119.    Plaintiff's and Class Members' time is highly valuable and irreplaceable, and accordingly, Plaintiff and Class Members suffered actual injury and damages in the form of lost time they have spent on mitigation activities in response to the Data Breach.

120.    Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach, locking their credit and/or debit cards, and monitoring their financial accounts for any unusual activity. Accordingly, the Data Breach has caused Plaintiff and Class Members to suffer actual injury in the form of lost time—which cannot be recaptured—spent on mitigation activities.

121.    Plaintiff's mitigation efforts are consistent with the U.S. GAO that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[35]

122.    Plaintiff's mitigation efforts are also consistent with the steps that FTC

---

[34] *See* Ex. 1.
[35] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE, GAO-07-737, (June 2007), https://www.gao.gov/new.items/d07737.pdf, (last accessed January 29, 2025).

recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[36]

### *Diminution of Value of Private Information*

123.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which, as described above, has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

### *Future Cost of Credit and Identity Theft Monitoring is Reasonable and  Necessary*

124.    Given the type of targeted attack in this case, sophisticated criminal activity, the type of Private Information involved, and Plaintiff's Private Information already being disseminated on the dark web, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes –*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money, file false tax returns, take out loans or lines of credit, or file false unemployment claims.

125.    Such fraud may go undetected until debt collection calls commence months, or even years later. An individual may not know that his or her Private Information was used to file for

---

[36] *What To Do Right Away,* FEDERAL TRADE COMMISSION, Identity Theft.gov, https://www.identitytheft.gov/Steps, (last accessed January 29, 2025).

unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

126.    Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

127.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach.

### *Loss of Benefit of the Bargain*

128.    Furthermore, Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant and/or its agents for the provision of medical services, Plaintiff and other reasonable patients or employees understood and expected that they were, in part, paying for the services and necessary data security to protect the Private Information, when in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received healthcare services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

### *Plaintiff Royal Corralejo's Experience*

129.    Plaintiff Royal Corralejo is a former patient of Defendant.

130.    As a condition of obtaining services from Defendant, Plaintiff was required to provide his Private Information to Defendant, including: name, address, date of birth, Social Security number, driver's license number, health insurance information, medical account number/patient identification number, other treatment or procedure information and financial

information.[37]

131.    At the time of the Data Breach, Defendant maintained Plaintiff's Private Information in its system.

132.    Plaintiff is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing his Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff would not have entrusted his Private Information to Defendant had he known of Defendant's lax data security policies.

133.    As a result of the Data Breach, and at the direction of Defendant's Notice Letter, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach and monitoring his financial accounts for any unusual activity. Plaintiff has spent significant time dealing with the Data Breach—valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

134.    Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of his Private Information; (iii) lost or diminished value of his Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of the benefit of the bargain; (vi) actual misuse of his Private Information in the form of experiencing an in increase in spam calls, texts, and/or emails; (vii) Plaintiff's Private Information being disseminated on the dark web; (viii) nominal damages; and (ix) the continued and certainly increased risk to his Private Information, which: (a) remains unencrypted and

---

[37] Exhibit 1, Excerpt of Royal Corralejo Notice Letter.

available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

135.    This misuse of Plaintiff's Private Information was caused, upon information and belief, by the fact that cybercriminals are able to easily use the information compromised in the Data Breach to find more information about an individual, such as their phone number or email address, from publicly available sources, including websites that aggregate and associate personal information with the owner of such information. Criminals often target data breach victims with spam emails, calls, and texts to gain access to their devices with phishing attacks or elicit further personal information for use in committing identity theft or fraud.

136.    As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

137.    Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

138.    Pursuant to Rule 42 of the Texas Rules of Civil Procedure, Plaintiff propose the following Class definition, subject to amendment as appropriate:

**Nationwide Class**

All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

139.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which

Defendant have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

140.    Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

141.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. Although the precise number of individuals is currently unknown to Plaintiff and exclusively in the possession of Defendant, upon information and belief, tens of thousands of individuals were impacted in the Data Breach. The Class is apparently identifiable within Defendant's records, as Defendant has already identified these individuals (as evidenced by sending them Notice Letters).

142.    <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, including the following:

       a.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

       b.    Whether Defendant had respective duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

       c.    Whether Defendant had respective duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

       d.    Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

e.   Whether and when Defendant actually learned of the Data Breach;

f.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g.   Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

h.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.   Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether Plaintiff and Class Members are entitled to actual damages and/or nominal damages as a result of Defendant's wrongful conduct;

k.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

143.   Typicality: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each Class Member.

144.   Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect

to the Class as a whole, not on facts or law applicable only to Plaintiff.

145.    Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

146.    Superiority and Manageability: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

147.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof

of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

148.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

149.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

150.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Petition.

151.    Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## COUNT I
### Negligence
**(On Behalf of Plaintiff and the Class)**

152.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 19 and paragraphs 28 through 150 as is fully set forth herein.

153.    Defendant requires its patients, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of providing its services.

154.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business of soliciting its services to its patients, which solicitations and services affect commerce.

155.    Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

156.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

157.    By voluntarily undertaking and assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

158.    Defendant had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

159.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the

healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

160.    For instance, HIPAA required Defendant to notify victims of the Breach within 60 days of the discovery of the Data Breach. Defendant did not begin to notify Plaintiff or Class Members of the Data Breach until January 8, 2025, despite, upon information and belief, Defendant knowing in October 2024 that unauthorized persons had accessed and acquired the private, protected, personal information of Plaintiff and the Class.

161.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks adequately protected the Private Information.

162.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of being patients of Defendant.

163.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

164.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

165.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former patients' Private Information it was no longer required to retain pursuant to regulations.

166.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

167.    Defendant had, and continues to have, a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

168.    Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.    Failing to adequately monitor the security of their networks and systems;

c.    Allowing unauthorized access to Class Members' Private Information;

d.    Failing to detect in a timely manner that Class Members' Private Information had been compromised;

e.    Failing to remove former patients' Private Information it was no longer required to retain pursuant to regulations, and

f.    Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

169.    Defendant violated Section 5 of the FTC Act and HIPAA by failing to use reasonable measures to protect Private Information and not complying with applicable industry

standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

170.    Plaintiff and Class Members were within the class of persons the FTC Act and HIPAA were intended to protect and the type of harm that resulted from the Data Breach was the type of harm that the statutes were intended to guard against.

171.    Defendant's violation of Section 5 of the FTC Act and HIPAA constitutes negligence.

172.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

173.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

174.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

175.    Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

176.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in

collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems or transmitted through third party systems.

177.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

178.    Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

179.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

180.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

181.    Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

182.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

183.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable

care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

184. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of the benefit of the bargain; (vi) actual misuse of their Private Information in the form of experiencing an in increase in spam calls, texts, and/or emails; (vii) their Private Information being disseminated on the dark web; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

185. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

186. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

187. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide

adequate credit monitoring to all Class Members.

## COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

188.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 19 and paragraphs 28 through 150 as is fully set forth herein.

189.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

190.    Pursuant to HIPAA, Defendant had a duty to use reasonable security measures to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l).

191.    Defendant breached its duties to Plaintiff and Class Members under these statutes by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information and by failing to notify Plaintiff and Class Members of the Data Breach within 60 days of the discovery of the Data Breach

192.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se.*

193.    Plaintiff and Class Members are within the class of persons the statutes were intended to protect and the harm to Plaintiff and Class Members resulting from the Data Breach was the type of harm against which the statutes were intended to prevent.

194.    But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

195.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that by failing to meet its duties, Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

196.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

### COUNT III
**Breach Of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

197.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 19 and paragraphs 28 through 150 as is fully set forth herein.

198.    Plaintiff and Class Members were required to provide their Private Information to Defendant in order to obtain healthcare services from Defendant. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for healthcare services.

199.    Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offer and provided their Private Information to Defendant.

200.    Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing healthcare services to Plaintiff and Class Members.

201.    Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

202.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations (including HIPAA and FTC guidelines on data security) and were consistent with industry standards.

203.    Implicit in the agreement between Plaintiff and Class Members and Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

204.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

205.    On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

206.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

207.    Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security.

Defendant failed to do so.

208.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

209.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of Defendant's implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

210.    Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

211.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

212.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the Private Information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that Private Information was compromised as a result of the Data Breach.

213.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members, and continued acceptance and storage of Private Information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

214.    As a direct and proximate result of Defendant's breach of the implied contracts,

Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of the benefit of the bargain; (vi) actual misuse of their Private Information in the form of experiencing an in increase in spam calls, texts, and/or emails; (vii) their Private Information being disseminated on the dark web; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

215.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

216.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT IV**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

217.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 19 and paragraphs 28 through 150 as is fully set forth herein.

218.    In light of the special relationship between Defendant and Plaintiff and Class Members, whereby Defendant became guardian of Plaintiff's and Class Members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private

Information to: (1) act primarily for Plaintiff and Class Members for the safeguarding of their Private Information; (2) timely notify Plaintiff and Class Members of a Data Breach's occurrence and disclosure; and (3) maintain complete and accurate records of what information (and where) Defendant did and does store their Private Information.

219.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with its patients, including to keep their Private Information secure.

220.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members because of the high degree of trust and confidence inherent to the nature of the relationship between Plaintiff and Class Members on the one hand and Defendant on the other, including with respect to their Private Information.

221.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

222.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Private Information.

223.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

224.    Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Private Information.

225.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i)

invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of the benefit of the bargain; (vi) actual misuse of their Private Information in the form of experiencing an in increase in spam calls, texts, and/or emails; (vii) their Private Information being disseminated on the dark web; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

### COUNT V
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

226.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 19 and paragraphs 28 through 150 as is fully set forth herein.

227.    Plaintiff brings this Count in the alternative to the breach of implied contract count above.

228.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they paid Defendant and in so doing also provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and should have had their Private Information protected with adequate data security.

229.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members'

Private Information for business purposes.

230.    Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

231.    Defendant acquired the Private Information through inequitable record retention as it failed to investigate and/or disclose the inadequate data security practices previously alleged. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

232.    If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would not have entrusted their Private Information to Defendant or obtained services from Defendant.

233.    Plaintiff and Class Members have no adequate remedy at law.

234.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

235.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy;

(ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of the benefit of the bargain; (vi) actual misuse of their Private Information in the form of experiencing an in increase in spam calls, texts, and/or emails; (vi) their Private Information being disseminated on the dark web; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

236.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

### COUNT VI
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

237.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 19 and paragraphs 28 through 150 as is fully set forth herein.

238.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

239.    Defendant owed a duty to its current and former patients, including Plaintiff and Class Members, to keep this information confidential.

240.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Private Information is highly offensive to a reasonable person.

241.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and Class Members disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

242.    The Data Breach constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

243.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

244.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and Class Members in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

245.    Acting with knowledge, Defendant was on notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and Class Members.

246.    As a proximate result of Defendant's acts and omissions, the private and sensitive Private Information of Plaintiff and Class Members were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and Class Members to suffer damages (as detailed *supra*).

247.    And, upon information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the dark web.

248.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members since their Private Information is still maintained by Defendant with its inadequate cybersecurity system and policies.

249.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and Class Members.

250.    In addition to injunctive relief, Plaintiff, on behalf of themselves and the other Class Members, also seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

### COUNT VII
**Breach of Confidence**
**(On Behalf of Plaintiff and the Class)**

1.    Plaintiff re-alleges and incorporate by reference paragraphs 1 through 19 and paragraphs 28 through 150 as is fully set forth herein.

2.    At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' Private Information that Plaintiff and Class Members entrusted to Defendant.

3.    As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by terms and expectations that Plaintiff's and Class Members' Private Information

would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

4.      Plaintiff and Class Members entrusted Defendant with their Private Information with the explicit and implicit understandings that Defendant would protect and not permit the Private Information to be disseminated to any unauthorized third parties.

5.      Plaintiff and Class Members also entrusted Defendant with their Private Information with the explicit and implicit understandings that Defendant would take precautions to protect that Private Information from unauthorized disclosure.

6.      Defendant voluntarily received Plaintiff's and Class Members' Private Information in confidence with the understanding that their Private Information would not be disclosed or disseminated to the public or any unauthorized third parties.

7.      As a result of Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and Class Members' Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

8.      As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class Members have suffered damages.

9.      But for Defendant's disclosure of Plaintiff's and Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' Private Information as well as the resulting damages.

10.    The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' Private Information. Defendant knew or should have known that its methods of accepting and securing Plaintiff's and Class Members' Private Information was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiff's and Class Members' Private Information.

11.    As a direct and proximate result of Defendant's breach of confidence with Plaintiff and the Class, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) identity theft; (ii) the loss of the opportunity for how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of current and former patients; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

12.     As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, request judgment against Defendant and that the Court grant the following:

A.     For an Order certifying the Class, and appointing Plaintiff and his Counsel to represent the Class;

B.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members;

C.     For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.     Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.     Requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.     Requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.     Requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information for Plaintiff's and Class Members' respective lifetimes;

    v.     Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

    vi.     Prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vii. Requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

viii. Requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix. Requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

x. Requiring Defendant to segment data by, among other things, creating firewalls and controls so that if one area of Defendant's network is compromised, hackers cannot gain access to portions of Defendant's systems;

xi. Requiring Defendant to conduct regular database scanning and securing checks;

xii. Requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xiii. Requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv. Requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xv. Requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi. Requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvii.   Requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers;

xviii.  For a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment;

D.      For an award of damages, including actual, nominal, consequential, and punitive damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: January 29, 2025                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**                  **FOSTER YARBOROUGH PLLC**

Eduard Korsinsky*                          By: */s/ Patrick Yarborough*
Mark Svensson*                             Patrick Yarborough
33 Whitehall Street, 17th Floor            Texas Bar No. 24084129
New York, New York 10004                   Benjamin F. Foster
Telephone: (212) 363-7500                  Texas Bar No. 24080898
Facsimile: (212) 363-7171                  Jeffrey Lucas "Luke" Ott
Email: ek@zlk.com                          Texas Bar No. 24116864
Email: msvensson@zlk.com                   917 Franklin Street
                                           Suite 220
                                           Houston, Texas 77002
                                           Telephone: (713) 331-5254
                                           Facsimile: (714) 513-5202
                                           Email: patrick@fosteryarborough.com
                                           Email: ben@fosteryarborough.com
                                           Email: luke@fosteryarborough.com

                                           *Counsel for Plaintiff and the Proposed Class*
                                           **Pro hac vice* application forthcoming

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Patrick Yarborough on behalf of Patrick Yarborough
Bar No. 24084129
patrick@fosteryarborough.com
Envelope ID: 96766631
Filing Code Description: Plaintiff's Original Petition
Filing Description:
Status as of 1/30/2025 9:32 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Eduard Korsinsky | | ek@zlk.com | 1/29/2025 6:01:43 PM | SENT |
| Mark Svensson | | msvensson@zlk.com | 1/29/2025 6:01:43 PM | SENT |
| Patrick Yarborough | | patrick@ecf.courtdrive.com | 1/29/2025 6:01:43 PM | SENT |
| Patrick Yarborough | | patrick@fosteryarborough.com | 1/29/2025 6:01:43 PM | SENT |
| Luke Ott | | luke@fosteryarborough.com | 1/29/2025 6:01:43 PM | SENT |
| Mona Lopez | | mona@fosteryarborough.com | 1/29/2025 6:01:43 PM | SENT |
| Benjamin Foster | | ben@fosteryarborough.com | 1/29/2025 6:01:43 PM | SENT |

# Exhibit D-2

FILED: 1/30/2025 4:01 PM
David Trantham
Denton County District Clerk
By: Aime Sanchez, Deputy

**CAUSE NO. 25-0927-431**

| | | |
|---|---|---|
| ROYAL CORRALEJO, ON BEHALF OF HIMSELF INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>**PLAINTIFF** | §<br>§<br>§<br>§ | In the 431st District Court |
| VS. | §<br>§ | Denton County, Texas |
| BAYMARK HEALTH SERVICES, INC.<br>**DEFENDANT** | §<br>§<br>§<br>§ | |

**RETURN OF SERVICE**

**On Thursday, January 30, 2025 AT 11:39 AM**, CITATION, CLASS ACTION PETITION, EXHIBIT 1 for service on BAYMARK HEALTH SERVICES, INC. c/o Registered Agent CT CORPORATION SYSTEM came to hand.

**On Thursday, January 30, 2025 AT 2:39 PM, I, Tracy Dewayne Edwards, PERSONALLY DELIVERED THE ABOVE-NAMED DOCUMENTS TO:** BAYMARK HEALTH SERVICES, INC. c/o Registered Agent CT CORPORATION SYSTEM, by delivering to by delivering to George Martinez, employee of CT Corp authorized to accept service., 1999 BRYAN STREET STE. 900, DALLAS, DALLAS COUNTY, TX 75201.

My name is Tracy Dewayne Edwards. My e-mail address is info@easy-serve.com. My date of birth is September 15, 1963. I am in all ways competent to make this statement, and this statement is based on personal knowledge. I am not a party to this case and have no interest in its outcome. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, Texas on Thursday, January 30, 2025.

*Tracy Dewayne Edwards*

Tracy Dewayne Edwards
1201 Louisiana St Ste 370
Houston, TX 77002

JBCC Registration# PSC-1872 expires March 31, 2026

BAY002

Doc ID: 331375_1

Copy from re:SearchTX